Hill was convicted of murder at a trial where the prosecutor's gang expert, Inspector Chaplin, was permitted to testify to out-of-court statements of gang member informants and to tell the jury that he, the expert, thought that what they had said to him was true. Inspector Chaplin's hearsay testimony was the primary basis for the prosecutor's argument that Hill armed himself intending to commit a revenge killing of a rival gang member and not to protect himself, as the defense had argued at trial. The State courts unreasonably applied Crawford v. Washington when they held that Crawford did not apply because the out-of-court statements of those absent witnesses were not hearsay. Under Crawford, the Sixth Amendment is not constrained by the rules of evidence adopted by the States. Roberts, it has to be testimonial hearsay under Crawford, right? True, Your Honor, which is a separate. Right. So it has to be hearsay in the sense that it's an out-of-court statement admitted for the truth of the matter. Or it's truth. Right. And so can I take the second half of what the court of appeals did? I have some trouble with its conclusion if the statements weren't hearsay. But are they – aren't they – how are they testimonial under the Supreme Court's precedence at the time? I must tell you, I can't figure out what the Supreme Court thinks is testimonial. Justice Thomas thinks it's only something signed with a seal on it, and other people think it's confessions. But why are these statements, the statements that were made to the gang expert? Put aside for a second the plea agreement. We can get to that later. Why are they testimonial? Why are they so clearly testimony under the Supreme Court's precedence that the California court of appeals was unreasonable? Thank you, Your Honor. Under Crawford and Davis, the governing authority, these statements were testimonial because the primary purpose for which they were collected was to assist Inspector Chaplin and the police department and the prosecutor to bring criminal cases against gang members in the Bayview. It was clear that Inspector Chaplin's purpose in going out into those neighborhoods and interviewing people in custody was to collect information about those gangs. And what Supreme Court decision do you rely on that this kind of collection of information renders the statements given testimonial? What case says that? Your Honor, both Crawford and Davis. Now, Crawford and Davis talk really far different. I'm trying to remember which one is which, but in neither case do we simply deal with an officer out investigating and talking to people and getting statements from people as he talks to them. So what Supreme Court case involves that principle? We've been slapped around the head by the Supreme Court pretty often for extending principles. So tell me what case, what's your best case on this point? Your Honor, Davis is the case that discusses in more detail the collection of evidence by police and the fact that that evidence collected for the primary purpose of bringing prosecutions, as opposed to responding to immediate emergencies, which is what the dichotomy was for them, that the primary purpose being to collect evidence for criminal prosecutions, that kind of information when collected by a police officer is testimonial hearsay. And here I believe the confounding issue here, if I could get right to it, is that in characterizing some of Inspector Chaplin's testimony as expert opinion doesn't change that in any way. I'm just saying that. I'm willing to accept that premise, but I'm still having trouble with after Williams, which has seven opinions, as the Supreme Court has wanted to do, tell me what the Supreme Court, what did Williams say, tell us was testimonial hearsay? Your Honor, Williams was concerned with a particular kind of hearsay that was given to support an expert scientific opinion, which, as I argued in my brief, simply is not comparable in any way to the evidence that was submitted in this case. The Court was most concerned, at least the majority in that case, of the possibility that very useful evidence like DNA comparison evidence could be excluded if the prosecutor has to bring in a bunch of scientists to testify about creation of underlying objective scientific data, which they thought they shouldn't have to do. That is not in any way remotely similar to what happened in this case, where what we have is a police officer obtaining statements, hearsay statements of fact, of opinion from witnesses who were not called at trial. But are these statements being admitted for the truth of those statements? Yes, Your Honor. Why? Because there was no other useful reason to admit them. Well, I thought it verified the credentials of the witness and formed the basis upon which he reached his conclusions. No? Your Honor, that was simply a fiction. There was no relationship, no logical relationship between what a murderer gang member said to Inspector Chaplin on the street and whether Inspector Chaplin had made some sort of scientific conclusion. He didn't apply any kind of scientific or rigorous analysis to this statement that was made to him. He simply repeated it to the jury and said, I think that's true. And that is a constitutional violation clearly under Crawford and Davis. But that's plainly a hearsay violation. But as you mentioned at the beginning, we're stuck with Crawford in trying to figure out where it leads us. Why was – I forget the gang member's name – why was his statement testimonial? If the Court is referring to Ronald Allen, who's a high-ranking military. Yes, the one who said that that shot was meant for me. Yes, that person. That's a testimonial statement for several reasons. One is Inspector Chaplin testified that he knew, of course, who Ronald Allen was. He was a big-block gang member who was notorious for being one of the most violent and murderous of those people, and he was constantly being watched by the police. They knew where he lived, and they also knew that he was in front of his house a lot. This – his home was very close to the place where Officer Espinoza had been killed less than a month earlier. Inspector Chaplin was driving past Ronald Allen's house. He saw Allen run into his house, and Inspector Chaplin thought, hide something. Inspector Chaplin's purpose, therefore, in getting out of his car and approaching the house to talk to Allen and the other people there was to obtain information because – information to support a criminal prosecution because he thought Mr. Allen had a gun. Well, but he wasn't investigating this crime when he talked to Mr. Allen, was he? He – Inspector Chaplin didn't say that he was investigating this particular offense, but Crawford and Davis don't require that the officers state that they're They're not clear. They're not clear in any event. I'm just trying to figure out what the limits are of your view of testimonial. So if an officer is investigating crime in the area, comes across what he thinks is a crime scene, talks to someone, thinks there's no crime that's been committed, he may not use that statement later as a basis for an opinion because it would have been testimonial had he prosecuted the first guy? If his primary purpose, or if the primary purpose of the conversation was to produce evidence, criminal evidence, then it is testimonial. And here at the conversation with Allen, we have at least two interrogation questions. One is, did you go into your house with a gun, which Inspector Chaplin admitted? He asked Allen right there and then, and Allen responded no. And then he also asked Mr. Allen if he had committed a particular murder. If that isn't criminal interrogation, especially by a police officer, what is? Especially when you have an individual who is a known target of police investigation on a fairly constant basis. This clearly was not a casual conversation. Respondent's brief says, oh, these two, Allen and Chaplin, they were joking. This was a joking conversation. All of the facts indicate otherwise, that this was a police officer who was investigating serious crimes and who asked somebody who is a known murderer, do you have a gun, do you have a gun in your house, and did you kill this person? And in the course of that conversation, he obtains his statement. Kennedy, so are you isolating on those remarks? I took your argument to be suggesting, based on Davis, that when a gang expert is put on as an expert, qualified as an expert, which we have said can be done. I just wrote an opinion, Vera, which purported to put some limits on when the expert is simply a conduit, for hearsay. But are you calling into question what is clearly established, that when an officer basically is out there in the community and qualifying himself as a gang expert for later testimony, that that's all testimonial hearsay and the Confrontation Clause requires exclusion of that basis evidence? And if so, what do we do with Williams? The Court itself divided on that, and Judge Kagan was passionate, I think, somewhat arguing your point. But that wasn't the prevailing opinion. Your Honor, we're not saying that all basis evidence must be excluded. In fact, the point I believe was, Your Honor, made in Vera, was that when the basis evidence is subjected to a rigorous or scientific analysis and the expert thereby and thereafter offers an opinion that can be subject to cross-examination, that that is an appropriate use of that kind of hearsay. But in this case, what we have is the officer truly acting as a conduit, not a So the answer to my question is, yes, you're just focusing on the nature of these two questions to establish that they are not basis evidence. They're basically out-and-out hearsay produced by an interrogation-like circumstance. That's correct, Your Honor. It's not in any way similar to the appropriate use of basis evidence and scientific expert evidence. What we have here is simply an officer interrogating some people that he knows to be bad actors. But he's channeling in this case, is he not? What he's saying is, it's my opinion that this was a hit meant for this individual I talked to, because he told me that. And although And if your opinion is only based on the fact that somebody told you something, then you're really just repeating a hearsay. That's correct. He was simply repeating what was told to him. But he was also adding to it an expert stamp of approval, which made it particularly prejudicial. This is a witness who the jury was being told, this person is an expert. He knows more than you do about what goes on in this very violent neighborhood. So in that way, when he told the jury, yes, this guy said that these bullets were meant for me, and I believe that that is true, that made it particularly damaging and highly prejudicial evidence. Hill's defense was that when he fired his shots, he was intending to defend himself. And so that went to the heart of his defense. And essentially, the expert witness told the jury that wasn't true, because someone told him, and he believed it to be untrue. So in that way, the expert's testimony clearly violated, clearly established Supreme Court precedent Crawford and Davis, which was in effect at the time. Williams v. Illinois, because it deals with scientific data, is on a different subject. Hill also had no opportunity to test through cross-examination the truthfulness of the statement. At the time, by the time of trial, Mr. Allen was deceased. I see that my time has almost run out. I'd like to reserve two minutes. You may do so, counsel. Thank you. We'll hear from the State. Thank you, Your Honors. May it please the Court. Bruce Ortega of the California Attorney General's Office representing the State. This was the holding of the court of appeal in this case. We conclude that the trial court here properly determined that the challenged basis evidence related by Chaplin was not offered for its truth, but only to evaluate Chaplin's opinions. Therefore, its admission did not violate the hearsay rule or the confrontation clause. And that was the court of appeal's conclusion. Here's my difficulty with it. And I hate to sound like Justice Thomas, but his separate opinion, I think, makes this pretty clear. What the witness said was, I believe this was a hit intended for the gentleman that I talked to who's no longer here. What's the basis of your opinion? The witness told me that. The victim told me that. Why isn't that hearsay? Why isn't that just classic channeling of somebody else? My understanding of the Williams case, when you add up the votes, the four from the dissent and Justice Thomas' dissent, is that that's now the prevailing view. That the out-of-court statements. It's a concurrence. Concurrence. Forgive me. Their position is that cannot logically be offered as an evaluation of the witness's opinion unless the jury necessarily takes it as true. Right. So your position, Your Honor, as I understand it, is currently the state of the law. The problem is, that wasn't the law at the time of the court of appeal's decision here. It had to have been a clearly established principle. There was no clearly established principle at the time of the court of appeal's opinion here that a jury cannot take the opinions and evaluate it only for the credibility of the officer's opinions without necessarily taking the hearsay to be true. Well, but it was clearly established at the end before Williams that the opinion the hearsay statement could only be introduced to support the officer's. Correct? Correct. And the jury cannot take it as true as the jury was instructed in this case. And what you're saying is that even in a case where it's absolutely clear that the only way the jury could take the out-of-court statement was for the truth of its – was for the truth of the matter, that prior to Williams that was not clearly established law. My position is, under the AEDPA and the standard of review, we can only call the court of appeal's holding wrong if there was a clearly established principle articulating Your Honor's position. But even Justice Souter – not Justice Souter, excuse me – Justice Alito's opinion in Williams, he points out that it was long held in the law that jurors were able to divert. Yeah. I'm asking a slightly different question. Could you have a subterfuge prior to Williams? Would that violate clearly established Federal law? In other words, if the expert said, I know how to get this statement in. I'll just repeat it and say it was the basis of my opinion. But that's not – would that violate clearly established Federal law prior to Williams? I don't know. I would have to look to see if there's a due process sort of violation, and it might. But that's not the argument here. The argument here was this jury cannot separate the truth of these statements from the evaluation of the opinion. Your witness vouched for the truth of the statement. He said – although, to be fair, it was on cross-examination, so I'm not sure you should be held responsible for it. But he did say, I believe this statement to be true. He did say that. But the jury was still instructed that they could not accept the statement from Ronny Uda-Allen as true. They could only use it to evaluate the credibility of the officer's opinion. And what other basis, then, this statement did the officer have for the opinion that this was a hit on Mr. Allen? He had – he had several that he added. One, that Mr. Allen was a central figure in the Big Block gang – in the Big Block gang. His name constantly was heard in shooting and homicide investigations in the Bayview. We have the evidence that the Petitioner spoke of Allen in the jailhouse conversation. We have the evidence that Petitioner and Dow were good friends. The officers believe that Allen killed Dow, that the murder weapon was found on Allen's friend Young, and Young was in custody at the time of the murder, and that, then again, we have the Petitioner near the presence of Allen's house. And the trial court found all of that is sufficient, along with the other opinion – or not the other opinion, the other statement, it's meant for me, was evidence that could go to the jury. Now, the defendant argued profusely at trial and argued again on appeal that the jury could not have evaluated Chaplain's opinion without necessarily taking as true Allen's statement that that shot was meant for me. And the court of appeal said, we think that's correct, but we're bound by the California Supreme Court authority that tells us the jury can take it just for credibility and not for the truth. So in my view, unless we can say there was a clearly established principle that made the California Supreme Court incorrect, this case, there was no unreasonable application of Crawford. We only talk about Crawford if we decide it was hearsay. The court of appeal said it's not hearsay because it didn't come in for the truth of the matter. Then, I acknowledge, in dicta, they went on to say, we don't think that's the correct rule, and if we were to write on a clean slate, we would adopt the rule that it is taken for the truth of the matter, and there should be a hearsay exception, or we would have to evaluate whether they're testimonial or not. Roberts. Did the court of appeals evaluate whether it was hearsay? They did. They did evaluate. There were five statements challenged. Right. And let's focus on this one. Correct. This is the most troublesome. Correct. Here's the evidence the court of the we know. Chaplain jokingly asked Allen whether he had hidden a gun inside his house, and a laughing Allen replies, what gun? During the course of the conversation, which I concede, during which Chaplain confronts Allen with murders Chaplain believed Allen had committed, and then Allen in court. Counsel, what page are you on? This is People v. Hill, right? This is the court of appeals decision, correct? Yes. Let me find the – I was just reading my notes from it, Your Honor. Oh, okay. All right. I'll find the excerpt of record. 66 is where it starts. And I think you're at 96 when you're – Correct. The court – it's at 98 to 99, I believe, where I'm going to start. Allen provided his statement to Chaplain in an informal, unstructured setting. While he's driving in the vicinity of New Hall and Newcomb, Chaplain sees Allen running to his residence. Chaplain talks to two men outside the residence, and then Allen comes out and talks to him. The court of appeals says there's no evidence that Allen was under arrest or that the circumstances surrounding the conversation were sufficiently formal that the statement was analogous to testimony. Chaplain had worked as a gang task force since 1999. In his role as a gang expert, he speaks with gang members on a daily basis. The court says nothing distinguishes the nature of this conversation with Allen from hundreds of others he had conducted. Nothing in the record suggests that Chaplain was investigating Espinosa's murder at the time of the conversation or that his purpose in engaging in the conversation was to develop information regarding the homicide or any other specific crime. So then the question becomes, is that objectively unreasonable under the Supreme Court precedent? I might be inclined to agree with opposing counsel that, looking at that in the first instance, a court could reasonably conclude that it might be testimonial. But I don't think it is we could say that it's unreasonable to conclude that it's not testimonial. And Your Honor asked about what Williams says about testimonial. And again, in Justice Alito's opinion, he said, the abuses that the court has identified as prompting the adoption of the confrontation clause share the following two characteristics. They involve an out-of-court statement having the primary purpose of accusing a targeted individual of engaging in criminal conduct, and they involve formalized statements such as affidavits, depositions, prior testimonies, or confessions. I think a court of appeal could reasonably conclude that this statement from Allen, that shot was meant for me, is not testimonial. I asked your opponent this question, so let me ask you. The record at this point, at least the court of appeals thinks that Mr. Chaplain is not investigating the crime that is the subject of this case when he talks to Mr. Allen. Correct. And that's a correct reading of the record? I believe it is. He doesn't even identify this contact until a year later. So that in Justice Alito's description, when it is aimed at a particular target, does that require that you be investigating the crime that involves this defendant? I don't know that it goes that far, but I think it has the primary purpose of targeting an individual. And I don't think we can say he's targeting Allen here, even though he does ask him, hey, I got some evidence that you committed murders. I mean, the fact that they're laughing about this lends itself to a non- And I guess my question was slightly different. Even if he's targeting Allen, is it testimonial if he's not targeting him? That's a good question, Your Honor. I don't know the answer to that. I'm not sure having the primary purpose of accusing a targeted individual of engaging in criminal conduct. When he's telling him, I know you committed some other murders, he's asking him about criminal conduct. He's not – it doesn't say it has to be in the case that it ultimately goes to trial. But, you know, that was the abuse, I think, that Justice Alito's talking about, which is you don't want somebody out there collecting information about the defendant and then presenting it as if it were true. Correct. But here we have all these other facts, I believe, that make it reasonable for the court of appeal in this case to have concluded that this was not testimonial. If we get there, if we determine that they were unreasonable, why can't we start there? You could, Your Honor. You could. The district court did. The district court did not address at all our argument that it's not clearly established to find it. Counsel, you point out that Williams was not decided at the relevant time here. If it were, would it have changed the result? I think it does not change the result. It just would make the court of appeals dicta the holding. If Williams had been decided, then the court of appeal, I believe, would have said we have to find a holding from Williams, five votes, four from the dissent and one from the concurrence that says it's not plausible for there to be a non-hearsay purpose for this evidence. If that had been the law at the time of the court of appeal decision, it would have been an unreasonable application for the court of appeal to have said no hearsay. They would have had to have been. But they would have then started to get to whether it was testimonial. Right. Which is what they did in the second part. And I'm not sure that's dictum. I think it's – I think there are two alternative holdings here, are there not? Fair enough. I thought it was dictum and it was not necessary to the holding because they can stop the analysis when they stop this wasn't hearsay. And if it's not hearsay, there's no reason to have a confrontation clause. I guess Judge Gonzales-Rogers came at it the other way, right? She said it's not testimonial. Correct. She didn't address the first. Unless the Court has any other questions, I'd submit the matter. No questions. Thank you, counsel. Thank you, Your Honors. Dr. Drakos, you have some reserved time. Thank you, Your Honor. I'd like to address the Court's question as to the court of appeal opinion that the conversation with Mr. Allen was not testimonial and counsel read from the opinion describing the interaction with Mr. Allen. And the – we submit that the court of appeal opinion on that fact was an objectively unreasonable determination of fact because it ignores the critical questioning. It doesn't – it says that those two engaged in a conversation after Allen came out of the house, but it doesn't mention that Inspector Chaplin admitted that he asked Allen if he put a gun in the house and our standard about what's interrogation and not, that kind of questioning talks about did the officer accuse that person in the questioning of committing a crime. And that's exactly what Inspector Chaplin did at that point. But the court of appeal opinion doesn't mention it. They characterize the conversation as casual even though it wasn't, which is an objectively unreasonable determination of fact. It also omits another critical point, which is that Inspector Chaplin testified that he asked Allen about committing a murder. Again, about as accusatory as it can be, that's what makes this testimonial, and to ignore that is to ignore the legal standard, to misapply it, and also to make an objectively unreasonable determination. Other indications of formality that were ignored by the court of appeal were that a police officer, even if he's in plainclothes, is a crime, and that makes this a formal conversation whether the tone of it is at times joking or not. It was a crime for Allen to lie to the inspector if he did. And the fact that this did not take place at a police station is of no consequence given these other very strong factors in place. I'd also like to address the counsel's assertion of what the basis was for this reported expert opinion other than simply Allen saying those shots were meant for me. For example, the notion that Dow and Hill were good friends, these were on very thin threads here. The only information they had was that Dow and Allen, or Hill, had been in a car together once smoking marijuana, and that Hill had attended Dow's funeral. It simply wasn't enough to say he's going to go out on a street corner and shoot someone in revenge of this person's death. Also, the inspector said that he, Inspector Chaplin, believed that Allen had killed Dow. We have no information as to exactly why that's true.  Thank you, counsel. Thank you. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Fisher, Hurwitz